IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: COPAXONE 775 PATENT LITIGATION | C.A. No. 16-1267-GMS<br>**CONSOLIDATED** |

**PLAINTIFFS' FIRST AMENDED COMPLAINT**

Plaintiffs Teva Pharmaceuticals USA, Inc.; Teva Pharmaceutical Industries Ltd.; and Teva Neuroscience, Inc. (collectively "Plaintiffs" or "Teva") bring this action for patent infringement and declaratory judgment against Defendants Doctor Reddy's Laboratories, Ltd. ("DRL Ltd.") and Doctor Reddy's Laboratories, Inc. ("DRL Inc.") (collectively "DRL"); Mylan Pharmaceuticals Inc. and Mylan Inc. (collectively "Mylan"); Sandoz, Inc. ("Sandoz"); Synthon Pharmaceuticals Inc., Synthon B.V., Synthon s.r.o., and Pfizer Inc. (collectively "Synthon"); and Amneal Pharmaceuticals LLC ("Amneal LLC") and Amneal Pharmaceuticals Company GmbH ("Amneal GmbH") (collectively "Amneal") (collectively "Defendants").

**NATURE OF THE ACTION**

1.      This is an action by Teva for infringement of United States Patent Nos. 9,155,775 ("the '775 patent") and 9,763,993 ("the '993 patent") (collectively the "patents-in-suit") arising under the patent laws of the United States, Title 35, United States Code. This action arises out of Defendants' ongoing attempt to market, manufacture, and sell a generic version of COPAXONE® 40 mg/mL, 1 mL syringe, injection ("COPAXONE®"), Teva's innovative treatment for patients with relapsing-remitting forms of multiple sclerosis, prior to the expiration of the patents-in-suit.

## THE PARTIES

### Teva

2.      Teva Pharmaceuticals USA, Inc. ("Teva USA") is a Delaware corporation with its principal place of business at 1090 Horsham Road, North Wales, Pennsylvania 19454-1090.

3.      Teva Pharmaceutical Industries Ltd. ("Teva Ltd.") is an Israeli company with its principal place of business at 5 Basel Street, P.O. Box 3190, Petah Tikva, 49131, Israel.

4.      Teva Neuroscience, Inc. ("Teva Neuroscience"), is a Delaware corporation with its principal place of business at 11100 Nall Ave, Overland Park, Kansas 66211.

### Amneal

5.      Upon information and belief, Amneal LLC is a limited liability company organized and existing under the laws of Delaware with a principal place of business at 400 Crossing Blvd., Third Floor, Bridgewater, NJ 08807-2863.

6.      Upon information and belief, Amneal GmbH is a limited liability company organized and existing under the laws of Switzerland with a principal place of business at Turnstrasse 30, 6312 Steinhausen – Switzerland.

### DRL

7.      Upon information and belief, DRL Ltd. is a corporation organized and existing under the laws of India with its principal place of business at 8-2-337, Road No. 3, Banjara Hills, Hyderabad, Telangana 500 034, India.

8.      Upon information and belief, DRL Inc. is a corporation organized and existing under the laws of New Jersey with its principal place of business at 107 College Road East, Princeton, New Jersey 08540, and is a wholly-owned subsidiary of DRL Ltd.

**Mylan**

9.    Upon information and belief, Mylan Pharmaceuticals Inc. is a corporation organized and existing under the laws of West Virginia with its principal place of business at 781 Chestnut Ridge Rd., Morgantown, West Virginia 26505.

10.    Mylan Pharmaceuticals Inc. is a wholly-owned subsidiary of Mylan Inc.

11.    Upon information and belief, Mylan Inc. is a corporation organized and existing under the laws of Pennsylvania with its principal place of business at 1500 Corporate Drive, Canonsburg, Pennsylvania 15317.

**Sandoz**

12.    Upon information and belief, Sandoz, Inc. is a corporation organized and existing under the laws of Colorado with its principal place of business at 506 Carnegie Center, Suite 400, Princeton, New Jersey 08540.

**Synthon**

13.    Upon information and belief, Synthon Pharmaceuticals Inc. is a corporation organized and existing under the laws of North Carolina with its principal place of business at 1007 Slater Road, Suite 150, Durham, North Carolina 27703.

14.    Upon information and belief, Synthon B.V. is a corporation organized and existing under the laws of the Netherlands with its principal place of business at Microweg 22, P.O. Box 7071, 6503 CM Nijmegen, The Netherlands.

15.    Upon information and belief, Defendant Synthon s.r.o. is a Czech entity having a principal place of business at Brnenska 32/cp.597, 678 17 Blansko, Czech Republic.

16.    Upon information and belief, Synthon Pharmaceuticals Inc. and Synthon s.r.o. are sister companies with Synthon Holding B.V. as their ultimate parent company.

3

17. Upon information and belief, Pfizer Inc. is a corporation organized and existing under the laws of Delaware with its principle place of business at 235 East 42nd Street, New York, New York 10017.

## JURISDICTION AND VENUE

### Subject Matter Jurisdiction

18. This action for patent infringement arises under 35 U.S.C. § 271.

19. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a), and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

### Personal Jurisdiction Over Amneal

20. Upon information and belief, this Court has personal jurisdiction over Amneal because it did not challenge this Court's exercise of personal jurisdiction over them during the Hatch-Waxman litigation of Defendants' ANDAs for generic versions of COPAXONE®. *In re Copaxone*, C.A. No. 14-1171-GMS (D. Del.). Additionally, Amneal actively sought to be in this forum in the matters involving the '775 patent. *See In re Copaxone 775 Patent Litigation*, C.A. No. 16-1267-GMS (D. Del.).

21. Upon information and belief, this Court has personal jurisdiction over Amneal LLC.

22. Upon information and belief, Amneal LLC is a limited liability company organized and existing under the laws of the State of Delaware.

23. Upon information and belief, Amneal LLC is registered to conduct business with the State of Delaware and maintains as a registered agent The Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, Delaware 19801.

24. Upon information and belief, Amneal LLC is registered pursuant to 24 Del. C. § 2540 to distribute its generic pharmaceutical products in Delaware.

4

25.    Upon information and belief, Amneal LLC holds current and valid "Distributor/Manufacturer CSR" and "Pharmacy-Wholesale" licenses from the Delaware Board of Pharmacy.

26.    Upon information and belief, Amneal LLC markets, distributes and/or sells generic drugs throughout the United States and within the State of Delaware.

27.    Upon information and belief, Amneal LLC has engaged in and maintained systematic and continuous business contacts within the State of Delaware, and has purposefully availed itself of the benefits and protections of the laws of Delaware rendering it at home in Delaware.

28.    Upon information and belief, Amneal LLC has committed, or aided, abetted, contributed to and/or participated in the commission of the tortious action of patent infringement that has led to foreseeable harm and injury to Teva, which manufactures COPAXONE® 40 mg/mL product, for sale and use throughout the United States, including within the State of Delaware.

29.    Upon information and belief, Amneal LLC collaborated and/or acted in concert with Amneal GmbH to apply for FDA approval to market and sell a generic version of COPAXONE® 40 mg/mL product throughout the United States, including in Delaware.

30.    Upon information and belief, this Court also has personal jurisdiction over Amneal LLC because it has previously been sued in this district without challenging this Court's jurisdiction over it and has availed itself of this forum previously by asserting counterclaims for the purposes of litigating a patent dispute.  *See, e.g., Endo Pharms. Inc. v. Amneal Pharms. LLC*, 14-1382-RGA; *Forest Labs., Inc. v. Amneal Pharms. LLC*, 14-508-LPS; *UCB, Inc. v. Amneal Pharms. LLC*, 13-1208-LPS.

5

31.    Upon information and belief, Amneal LLC's systematic and continuous business contacts within Delaware render it at home in Delaware.

32.    Upon information and belief, Amneal LLC consented to jurisdiction in Delaware by registering to conduct business with the State of Delaware and maintaining a registered agent in Delaware.

33.    Upon information and belief, this Court has personal jurisdiction over Amneal LLC for the reasons stated herein, including, *inter alia*, Amneal LLC's activities in the forum, activities directed at the forum, significant contacts with the forum, and consent, all of which render Amneal LLC at home in the forum.

34.    Upon information and belief, this Court has personal jurisdiction over Amneal GmbH.

35.    Upon information and belief, Amneal GmbH has committed, or aided, abetted, contributed to and/or participated in the commission of the tortious action of patent infringement that has led to foreseeable harm and injury to Teva, which manufactures COPAXONE® 40 mg/mL product, for sale and use throughout the United States, including within the State of Delaware.

36.    Upon information and belief, Amneal GmbH has applied through its agent, Amneal LLC, for FDA approval to market and sell a generic version of COPAXONE® 40 mg/mL product throughout the United States, including in Delaware.

37.    Upon information and belief, Amneal GmbH, directly or indirectly through its agent Amneal LLC, markets, distributes, and/or sells generic drugs throughout the United States and within the State of Delaware.

6

38.    Upon information and belief, this Court also has personal jurisdiction over Amneal GmbH under Federal Rule of Civil Procedure 4(k)(2).

39.    Upon information and belief, this Court has personal jurisdiction over Amneal GmbH for the reasons stated herein, including, *inter alia*, Amneal GmbH's activities in the forum, activities directed at the forum, and significant contacts with the forum, all of which render Amneal GmbH at home in the forum.

### Personal Jurisdiction Over DRL

40.    Upon information and belief, this Court has personal jurisdiction over DRL because DRL did not challenge this Court's exercise of personal jurisdiction over them during the Hatch-Waxman litigation of Defendants' ANDAs for generic versions of COPAXONE®. *See In re Copaxone*, C.A. No. 14-1171-GMS (D. Del.).  Additionally, DRL actively sought to be in this forum in the matters involving the '775 patent.  *See In re Copaxone 775 Patent Litigation*, C.A. No. 16-1267-GMS (D. Del.).

41.    Upon information and belief, this Court has personal jurisdiction over DRL Inc.

42.    DRL Inc. has admitted that it is subject to personal jurisdiction in this district. *See Genzyme Corporation et al. v. Dr. Reddy's Laboratories Ltd. et al.*, C.A. No. 13-1506 (D. Del.).

43.    Upon information and belief, Defendant DRL Inc. markets, distributes and/or sells generic drugs within the State of Delaware and throughout the United States.

44.    Upon information and belief, Defendant DRL Inc. has engaged in and maintained systematic and continuous business contacts within the State of Delaware, and has purposefully availed itself of the benefits and protections of the laws of Delaware rendering it at home in Delaware.

45.     Upon information and belief, DRL Inc. routinely files ANDAs in the United States and markets dozens of generic pharmaceutical products in the State of Delaware, including, *inter alia*, allopurinol, amlodipine besylate-atorvastatin, amoxicillin, amoxicillin-clavulanate potassium, and anastrozole.

46.     Upon information and belief, DRL Inc. has agreements with pharmaceutical retailers, wholesalers or distributors providing for the distribution of its products in the State of Delaware, including, *inter alia*, allopurinol, amlodipine besylate-atorvastatin, amoxicillin, amoxicillin-clavulanate potassium, and anastrozole.

47.     Upon information and belief, Defendant DRL Inc. has also committed, or aided, abetted, contributed to and/or participated in the commission of, the tortious action of patent infringement that has led to foreseeable harm and injury to Teva, which manufactures COPAXONE® 40 mg/mL product for sale and use throughout the United States, including within the State of Delaware.

48.     Teva sells COPAXONE® 40 mg/mL product in the State of Delaware.

49.     Upon information and belief, Defendant DRL Inc. has applied for FDA approval to market and sell a generic version of COPAXONE® 40 mg/mL product throughout the United States, including in Delaware.

50.     Upon information and belief, DRL Inc. will market, sell, and offer for sale its proposed generic version of COPAXONE® 40 mg/mL product in the State of Delaware following FDA approval of that product.

51.     Upon information and belief, as a result of DRL Inc.'s marketing, selling, or offering for sale of its generic version of COPAXONE® 40 mg/mL product in the State of

8

Delaware, Teva will lose sales of COPAXONE® 40 mg/mL product and be injured in the State of Delaware.

52.     Further, upon information and belief, DRL Inc., affiliates of DRL Inc. and/or subsidiaries of DRL Inc. are registered with the Delaware Board of Pharmacy as a "Distributor/Manufacturer" and "Pharmacy-Wholesale" of drug products.

53.     Upon information and belief, this Court has personal jurisdiction over Defendant DRL Inc. for the reasons stated herein, including, *inter alia*, Defendant DRL Inc.'s activities in the forum, activities directed at the forum, and significant contacts with the forum, all of which render Defendant DRL Inc. at home in the forum.

54.     Upon information and belief, this Court has personal jurisdiction over DRL Ltd.

55.     DRL Ltd. has admitted that it is subject to personal jurisdiction in this district. *See Genzyme Corporation et al. v. Dr. Reddy's Laboratories Ltd. et al.*, C.A. No. 13-1506 (D. Del.).

56.     Upon information and belief, Defendant DRL Ltd. (through its wholly-owned subsidiary Defendant DRL Inc.) markets, distributes and/or sells generic drugs within the State of Delaware and throughout the United States.

57.     Upon information and belief, Defendant DRL Inc. has engaged in and maintained systematic and continuous business contacts within the State of Delaware, and has purposefully availed itself of the benefits and protections of the laws of Delaware rendering it at home in Delaware.

58.     Upon information and belief, DRL Ltd. (through its wholly-owned subsidiary Defendant DRL Inc.) routinely files ANDAs in the United States and markets dozens of generic

9

pharmaceutical products in the State of Delaware, including, *inter alia*, ciprofloxacin, allopurinol, amlodipine besylate, atorvastatin calcium, and citalopram.

59. Upon information and belief, DRL Ltd. (through its wholly-owned subsidiary Defendant DRL Inc.) has agreements with pharmaceutical retailers, wholesalers or distributors providing for the distribution of its products in the State of Delaware, including, *inter alia*, ciprofloxacin, allopurinol, amlodipine besylate, atorvastatin calcium, and citalopram.

60. Upon information and belief, Defendant DRL Ltd. has also committed, or aided, abetted, contributed to and/or participated in the commission of, the tortious action of patent infringement that has led to foreseeable harm and injury to Teva, which manufactures COPAXONE® 40 mg/mL product for sale and use throughout the United States, including the State of Delaware.

61. Teva sells COPAXONE® 40 mg/mL product in the State of Delaware.

62. Upon information and belief, Defendant DRL Ltd. has applied for FDA approval to market and sell a generic version of COPAXONE® 40 mg/mL product throughout the United States, including in Delaware.

63. Upon information and belief, DRL Ltd. (through its wholly-owned subsidiary Defendant DRL Inc.) will market, sell, and offer for sale its proposed generic version of COPAXONE® 40 mg/mL product in the State of Delaware following FDA approval of that product.

64. Upon information and belief, as a result of DRL Ltd.'s marketing, selling, or offering for sale of its generic version of COPAXONE® 40 mg/mL product in the State of Delaware, Teva will lose sales of COPAXONE® 40 mg/mL product and be injured in the State of Delaware.

65.    Further, upon information and belief, DRL Ltd., affiliates of DRL Ltd. and/or subsidiaries of DRL Ltd. are registered with the Delaware Board of Pharmacy as a "Distributor/Manufacturer" and "Pharmacy-Wholesale" of drug products.

66.    Upon information and belief, this Court has personal jurisdiction over Defendant DRL Ltd. for the reasons stated herein, including, *inter alia*, Defendant DRL Ltd.'s activities in the forum, activities directed at the forum, and significant contacts with the forum, all of which render Defendant DRL Ltd. at home in the forum.

67.    Upon information and belief, this Court also has personal jurisdiction over DRL because it previously has been sued in this district, did not challenge this Court's assertion of personal jurisdiction over it, and availed itself of this forum by asserting counterclaims for the purpose of litigating a patent infringement dispute.  *See, e.g., Genzyme Corporation, et al. v. Dr. Reddy's Laboratories Ltd., et al.*, C.A. No. 13-1506 (D. Del.); *Teijin Ltd., et al. v. Dr. Reddy's Laboratories Ltd. et al.*, C.A. No. 13-1780 (D. Del.); *Pfizer, et al. v. Dr. Reddy's Laboratories Ltd., et al.,* C.A. No. 13-989 (D. Del.); *Fresenius Kabi USA LLC v. Dr. Reddy's Laboratories Ltd., et al.*, C.A. No. 13-925 (D. Del.); *Novartis Pharmaceuticals Corp., et al. v. Dr. Reddy's Laboratories, Ltd., et al.*, C.A. No. 14-157 (D. Del.).

68.     Upon information and belief, following any FDA approval of DRL's ANDA, Defendants DRL Inc. and DRL Ltd. will work in concert with one another to make, use, offer to sell, and sell a generic version of COPAXONE® 40 mg/mL product throughout the United States, including in Delaware.

69.    Upon information and belief, DRL Ltd. will manufacture DRL's proposed generic version of COPAXONE® 40 mg/mL product on behalf of DRL Inc. and DRL Inc. will act as the agent of DRL Ltd. for sale of that product in the United States, including Delaware.

11

## Personal Jurisdiction Over Mylan

70.    Upon information and belief, this Court has personal jurisdiction over Defendant Mylan.  Mylan challenged this Court's exercise of personal jurisdiction over them for purposes of litigating allegations of patent infringement involving its ANDA, but lost that challenge.  *In re Copaxone*, C.A. No. 14-1171-GMS (D. Del).  After losing their challenge to personal jurisdiction, in the pretrial filings for *In re Copaxone*, Mylan did not challenge this Court's exercise of personal jurisdiction over them during the Hatch-Waxman litigation of Defendants' ANDAs for generic versions of COPAXONE®.   *See* D.I. 259, Redacted Version of Pretrial Order, *In re Copaxone*, C.A. No. 14-1171-GMS (D. Del.).  Additionally, Mylan actively sought to be in this forum in the matters involving the '775 patent.  *See In re Copaxone 775 Patent Litigation*, C.A. No. 16-1267-GMS (D. Del.).

71.    Upon information and belief, this Court has personal jurisdiction over Defendant Mylan Pharmaceuticals Inc.

72.    Upon information and belief, Defendant Mylan Pharmaceuticals Inc. has availed itself of this forum by bringing a civil action in this forum.  *See, e.g., Mylan Pharmaceuticals Inc., et al. v. Eurand Inc., et al.*, C.A. No. 10-306 (D. Del.); *Mylan Pharmaceuticals Inc., et al. v. Kremers Urban Development Co.*, C.A. No. 02-1628 (D. Del.); *Mylan Pharmaceuticals Inc., et al. v. Galderma Laboratories Inc. et al.*, C.A. No. 10-892 (D. Del.); *DuPont Merck Pharmaceutical Co., et al. v. Bristol-Myers Squibb Co., et al.*, C.A. No. 95-290 (D. Del.).

73.    Upon information and belief, Defendant Mylan Pharmaceuticals Inc. is registered to conduct business with the State of Delaware and maintains as a registered agent Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

74.     Upon information and belief, Defendant Mylan Pharmaceuticals Inc. is registered pursuant to 24 Del. C. § 2540 to distribute its generic pharmaceutical products in Delaware.

75.     Upon information and belief, Defendant Mylan Pharmaceuticals Inc. holds current and valid "Distributor/Manufacturer CSR" and "Pharmacy-Wholesale" licenses from the Delaware Board of Pharmacy.

76.     Upon information and belief, Defendant Mylan Pharmaceuticals Inc. markets, distributes and/or sells generic drugs throughout the United States and within the State of Delaware.

77.     Upon information and belief, Defendant Mylan Pharmaceuticals Inc. has engaged in and maintained systematic and continuous business contacts within the State of Delaware, and has purposefully availed itself of the benefits and protections of the laws of Delaware rendering it at home in Delaware.

78.     Upon information and belief, Mylan Pharmaceuticals Inc. routinely files ANDAs in the United States and markets dozens of generic pharmaceutical products in the State of Delaware, including, *inter alia*, abacavir sulfate, acyclovir, alprazolam, amitriptyline hydrochloride-chlordiazepoxide, and amlodipine besylate.

79.     Upon information and belief, Mylan Pharmaceuticals Inc. has agreements with pharmaceutical retailers, wholesalers, or distributors providing for the distribution of its products in the State of Delaware, including, *inter alia*, abacavir sulfate, acyclovir, alprazolam, amitriptyline hydrochloride-chlordiazepoxide, and amlodipine besylate.

80.     Upon information and belief, Defendant Mylan Pharmaceuticals Inc. has also committed, or aided, abetted, contributed to, and/or participated in the commission of, the tortious action of patent infringement that has led to foreseeable harm and injury to Teva, which

manufactures COPAXONE® 40 mg/mL product, for sale and use throughout the United States, including the State of Delaware.

81.    Teva sells COPAXONE® 40 mg/mL product in the State of Delaware.

82.    Upon information and belief, Defendant Mylan Pharmaceuticals Inc. has applied for FDA approval to market and sell a generic version of COPAXONE® 40 mg/mL product throughout the United States, including in Delaware, and this application was approved on October 3, 2017.

83.    Upon information and belief, Mylan Pharmaceuticals Inc. has or will market, sell, and offer for sale its generic version of COPAXONE® 40 mg/mL product in the State of Delaware.

84.    Upon information and belief, as a result of Mylan Pharmaceuticals Inc.'s marketing, selling, or offering for sale of its generic version of COPAXONE® 40 mg/mL product in the State of Delaware, Teva will lose sales of COPAXONE® 40 mg/mL product and be injured in the State of Delaware.

85.    Upon information and belief, this Court also has personal jurisdiction over Defendant Mylan Pharmaceuticals Inc. because it previously has been sued in this district without challenging this Court's assertion of personal jurisdiction over it and availed itself of this forum by asserting counterclaims for the purpose of litigating a patent infringement dispute. *See, e.g., Alcon Research Ltd. v. Mylan Inc., et al.*, C.A. No. 13-1332 (D. Del.); *UCB Inc., et al. v. Mylan Inc., et al.*, C.A. No. 13-1214 (D. Del.); *Forest Laboratories Inc., et al v. Mylan Inc., et al.*, C.A. No. 13-1605 (D. Del.).

14

86.    Defendant Mylan Pharmaceuticals Inc. consented to jurisdiction in Delaware by registering to conduct business with the State of Delaware and maintaining a registered agent in Delaware.

87.    Upon information and belief, this Court has personal jurisdiction over Defendant Mylan Pharmaceuticals Inc. for the reasons stated herein, including, *inter alia*, Defendant Mylan Pharmaceuticals Inc.'s activities in the forum, activities directed at the forum, and significant contacts with the forum, all of which render Defendant Mylan Pharmaceuticals Inc. at home in the forum.

88.    Upon information and belief, this Court has personal jurisdiction over Defendant Mylan Inc.

89.    Upon information and belief, Defendant Mylan Inc. has availed itself of this forum by bringing a civil action in this forum.  *See, e.g., Mylan Pharmaceuticals Inc., et al. v. Eurand Inc., et al.*, C.A. No. 10-306 (D. Del.); *Mylan Pharmaceuticals Inc., et al. v. Kremers Urban Development Co.*, C.A. No. 02-1628 (D. Del.); *Mylan Pharmaceuticals Inc., et al. v. Galderma Laboratories Inc., et al.*, C.A. No. 10-892 (D. Del.); *DuPont Merck Pharmaceutical Co., et al. v. Bristol-Myers Squibb Co., et al.*, C.A. No. 95-290 (D. Del.).

90.    Upon information and belief, Defendant Mylan Inc. (through its wholly-owned subsidiary Defendant Mylan Pharmaceuticals Inc.) markets, distributes, and/or sells generic drugs throughout the United States and within the State of Delaware.

91.    Upon information and belief, Defendant Mylan Inc. has engaged in and maintained systematic and continuous business contacts within the State of Delaware, and has purposefully availed itself of the benefits and protections of the laws of Delaware rendering it at home in Delaware.

92.     Upon information and belief, Mylan Inc. (through its wholly-owned subsidiary Defendant Mylan Pharmaceuticals Inc.) routinely files ANDAs in the United States and markets dozens of generic pharmaceutical products in the State of Delaware, including, *inter alia*, albuterol sulfate, alendronate sodium, alprazolam, amitriptyline hydrochloride-perphenazine, and amlodipine besylate.

93.     Upon information and belief, Mylan Inc. (through its wholly-owned subsidiary Defendant Mylan Pharmaceuticals Inc.) has agreements with pharmaceutical retailers, wholesalers or distributors providing for the distribution of its products in the State of Delaware, including, *inter alia*, albuterol sulfate, alendronate sodium, alprazolam, amitriptyline hydrochloride-perphenazine, and amlodipine besylate.

94.     Upon information and belief, Defendant Mylan Inc. has also committed, or aided, abetted, contributed to and/or participated in the commission of, the tortious action of patent infringement that has led to foreseeable harm and injury to Teva, which manufactures COPAXONE® 40 mg/mL product, for sale and use throughout the United States, including the State of Delaware.

95.     Teva sells COPAXONE® 40 mg/mL product in the State of Delaware.

96.     Upon information and belief, Defendant Mylan Inc. (through its wholly-owned subsidiary Defendant Mylan Pharmaceuticals Inc.) has applied for FDA approval to market and sell a generic version of COPAXONE® 40 mg/mL product throughout the United States, including in Delaware, and this application was approved on October 3, 2017.

97.     Upon information and belief, Mylan Inc. (through its wholly-owned subsidiary Defendant Mylan Pharmaceuticals Inc.) has or will market, sell, and offer for sale its generic version of COPAXONE® 40 mg/mL product in the State of Delaware.

98.    Upon information and belief, as a result of Mylan Inc.'s (through its wholly-owned subsidiary Defendant Mylan Pharmaceuticals Inc.) marketing, selling, or offering for sale of its generic version of COPAXONE® 40 mg/mL product in the State of Delaware, Teva will lose sales of COPAXONE® 40 mg/mL product and be injured in the State of Delaware.

99.    Upon information and belief, this Court also has personal jurisdiction over Defendant Mylan Inc. because it previously has been sued in this district without challenging this Court's assertion of personal jurisdiction over it and has availed itself of this forum by asserting counterclaims for the purpose of litigating a patent infringement dispute.  *See, e.g., Alcon Research Ltd. v. Mylan Inc., et al.*, C.A. No. 13-1332 (D. Del.); *UCB Inc., et al. v. Mylan Inc., et al.*, C.A. No. 13-1214 (D. Del.); *Forest Laboratories Inc., et al v. Mylan Inc., et al.*, C.A. No. 13-1605 (D. Del.).

100.    Upon information and belief, this Court has personal jurisdiction over Defendant Mylan Inc. for the reasons stated herein, including, *inter alia*, Defendant Mylan Inc.'s activities in the forum, activities directed at the forum, and significant contacts with the forum, all of which render Defendant Mylan Inc. at home in the forum.

101.    Upon information and belief, following the October 3, 2017 FDA approval of Mylan's ANDA, Defendants Mylan Pharmaceuticals Inc. and Mylan Inc. will work in concert with one another to make, use, offer to sell, and sell a generic version of COPAXONE® 40 mg/mL product throughout the United States, including in Delaware.

102.    Upon information and belief, Mylan Pharmaceuticals Inc. will manufacture Mylan's proposed generic version of COPAXONE® 40 mg/mL product on behalf of Mylan Inc. and Mylan Pharmaceuticals Inc. will act as the agent of Mylan Inc. for sale of that product in the United States, including Delaware.

17

**Personal Jurisdiction Over Sandoz**

103.    Upon information and belief, this Court has personal jurisdiction over Sandoz because it did not challenge this Court's exercise of personal jurisdiction over them during the Hatch-Waxman litigation of Defendants' ANDAs for generic versions of COPAXONE®.    *In re Copaxone*, C.A. No. 14-1171-GMS (D. Del.).  Additionally, Sandoz actively sought to be in this forum in the matters involving the '775 patent.  *See In re Copaxone 775 Patent Litigation*, C.A. No. 16-1267-GMS (D. Del.).

104.    Upon information and belief, this Court has personal jurisdiction over Defendant Sandoz, Inc.

105.    Upon information and belief, Defendant Sandoz, Inc. markets, distributes and/or sells generic drugs within the State of Delaware and throughout the United States.

106.    Upon information and belief, Defendant Sandoz, Inc. has engaged in and maintained systematic and continuous business contacts within the State of Delaware, and has purposefully availed itself of the benefits and protections of the laws of Delaware rendering it at home in Delaware.

107.    Upon information and belief, Sandoz, Inc. routinely files ANDAs in the United States and markets dozens of generic pharmaceutical products in the State of Delaware, including, *inter alia*, amoxicillin-clavulanate potassium, atorvastatin calcium, decitabine, ceftriaxone sodium, and clindamycin phosphate.

108.    Upon information and belief, Sandoz, Inc. has agreements with pharmaceutical retailers, wholesalers or distributors providing for the distribution of its products in the State of Delaware, including, *inter alia*, amoxicillin-clavulanate potassium, atorvastatin calcium, decitabine, ceftriaxone sodium, and clindamycin phosphate.

18

109. Upon information and belief, Defendant Sandoz, Inc. has also committed, or aided, abetted, contributed to and/or participated in the commission of, the tortious action of patent infringement that has led to foreseeable harm and injury to Teva, which manufactures COPAXONE® 40 mg/mL product for sale and use throughout the United States, including the State of Delaware.

110. Teva sells COPAXONE® 40 mg/mL product in the State of Delaware.

111. Upon information and belief, Defendant Sandoz, Inc. has applied for FDA approval to market and sell a generic version of COPAXONE® 40 mg/mL product throughout the United States, including in Delaware.

112. Upon information and belief, Sandoz, Inc. will market, sell, and offer for sale its proposed generic version of COPAXONE® 40 mg/mL product in the State of Delaware following FDA approval of that product.

113. Upon information and belief, as a result of Sandoz, Inc.'s marketing, selling, or offering for sale of its generic version of COPAXONE® 40 mg/mL product in the State of Delaware, Teva will lose sales of COPAXONE® 40 mg/mL product and be injured in the State of Delaware.

114. Further, upon information and belief, Sandoz, Inc., affiliates of Sandoz, Inc. and/or subsidiaries of Sandoz, Inc. are registered with the Delaware Board of Pharmacy as a "Distributor/Manufacturer" and "Pharmacy-Wholesale" of drug products.

115. Upon information and belief, this Court also has personal jurisdiction over Sandoz, Inc. because it previously has been sued in this district, did not challenge this Court's assertion of personal jurisdiction over it, and availed itself of this forum by asserting counterclaims for the purpose of litigating a patent infringement dispute. *See e.g. Genzyme*

19

*Corporation, et al. v. Sandoz, Inc.*, C.A. No. 13-1507 (D. Del.); *UCB Inc., et al. v. Sandoz, Inc.*, C.A. No. 13-1216 (D. Del.)); *Merck Sharp & Dohme Corp. v. Sandoz.*, C.A. No. 14-916 (D. Del.).

116.    Upon information and belief, this Court has personal jurisdiction over Defendant Sandoz, Inc. for the reasons stated herein, including, *inter alia*, Defendant Sandoz, Inc.'s activities in the forum, activities directed at the forum, and significant contacts with the forum, all of which render Defendant Sandoz, Inc. at home in the forum.

**Personal Jurisdiction Over Synthon**

117.    Upon information and belief, this Court has personal jurisdiction over Synthon because Synthon did not challenge this Court's exercise of personal jurisdiction over them during the Hatch-Waxman litigation of Defendants' ANDAs for generic versions of COPAXONE®.  *In re Copaxone*, C.A. No. 14-1171-GMS (D. Del.).  Additionally, Synthon actively sought to be in this forum in the matters involving the '775 patent.  *See In re Copaxone 775 Patent Litigation*, C.A. No. 16-1267-GMS (D. Del.).

118.    Upon information and belief, this Court has personal jurisdiction over Defendant Synthon Pharmaceuticals, Inc.

119.    Upon information and belief, Defendant Synthon Pharmaceuticals, Inc. markets, distributes and/or sells generic drugs within the State of Delaware and throughout the United States.

120.    Upon information and belief, Defendant Synthon Pharmaceuticals, Inc. has engaged in and maintained systematic and continuous business contacts within the State of Delaware, and has purposefully availed itself of the benefits and protections of the laws of Delaware rendering it at home in Delaware.

20

121.    Upon information and belief, Synthon routinely files ANDAs in the United States and markets dozens of generic pharmaceutical products in the State of Delaware, including, *inter alia*, levocetirazine dihydrochloride, pioglitazone hydrochloride, tamsulosin hydrochloride, and zolpidem tartrate.

122.    Upon information and belief, Synthon has agreements with pharmaceutical retailers, wholesalers or distributors providing for the distribution of its products in the State of Delaware, including, *inter alia*, levocetirazine dihydrochloride, pioglitazone hydrochloride, tamsulosin hydrochloride, and zolpidem tartrate.

123.    Upon information and belief, Defendant Synthon Pharmaceuticals, Inc. has also committed, or aided, abetted, contributed to and/or participated in the commission of, the tortious action of patent infringement that has led to foreseeable harm and injury to Teva, which manufactures COPAXONE® 40 mg/mL product for sale and use throughout the United States, including the State of Delaware.

124.    Teva sells COPAXONE® 40 mg/mL product in the State of Delaware.

125.    Upon information and belief, Defendant Synthon Pharmaceuticals, Inc. has applied for FDA approval to market and sell a generic version of COPAXONE® 40 mg/mL product throughout the United States, including in Delaware.

126.    Upon information and belief, Synthon Pharmaceuticals, Inc. will market, sell, and offer for sale its proposed generic version of COPAXONE® 40 mg/mL product in the State of Delaware following FDA approval of that product.

127.    Upon information and belief, as a result of Synthon's marketing, selling, or offering for sale of its generic version of COPAXONE® 40 mg/mL product in the State of

21

Delaware, Teva will lose sales of COPAXONE® 40 mg/mL product and be injured in the State of Delaware.

128.    Upon information and belief, this Court has personal jurisdiction over Defendant Synthon Pharmaceuticals, Inc. for the reasons stated herein, including, *inter alia*, Defendant Synthon Pharmaceuticals, Inc.'s activities in the forum, activities directed at the forum, and significant contacts with the forum, all of which render Defendant Synthon Pharmaceuticals, Inc. at home in the forum.

129.    Upon information and belief, this Court has personal jurisdiction over Defendant Synthon B.V.

130.    Upon information and belief, Defendant Synthon B.V. is partnering with Defendant Synthon Pharmaceuticals Inc. to attempt to bring a three-times-a-week generic COPAXONE® (glatiramer acetate injection, 40 mg/mL) to market in the U.S.  *See* http://www.synthon.com/Corporate/News/PressReleases/Synthon-Announces-Filing-of-Glatiramer-Acetate-40-mg-mL-ANDA-Containing-a-Paragraph-IV-Certification, accessed 10/14/14; *see also* "Synthon announces successful outcome of the Phase III GATE study with its generic glatiramer acetate." Business Wire, March 27, 2014.

131.    Upon information and belief, Defendant Synthon B.V. collaborated and/or acted in concert with Defendant Synthon Pharmaceuticals Inc. to apply for FDA approval to market and sell a generic version of COPAXONE® 40 mg/mL throughout the United States, including in Delaware.

132.    Upon information and belief, Defendant Synthon B.V. (through its subsidiary Defendant Synthon Pharmaceuticals, Inc.) markets, distributes and/or sells generic drugs within the State of Delaware and throughout the United States.

22

133.    Upon information and belief, Defendant Synthon B.V. has engaged in and maintained systematic and continuous business contacts within the State of Delaware, and has purposefully availed itself of the benefits and protections of the laws of Delaware, rendering it at home in Delaware.

134.    Upon information and belief, Defendant Synthon B.V. has committed, or aided, abetted, contributed to and/or participated in the commission of, the tortious action of patent infringement that has led to foreseeable harm and injury to Teva, which manufactures COPAXONE® 40 mg/mL product for sale and use throughout the United States, including within the State of Delaware.

135.    Defendant Synthon B.V. has applied for FDA approval to market and sell a generic version of COPAXONE® 40 mg/mL product throughout the United States, including in Delaware.

136.    Upon information and belief, Synthon B.V. caused its agent Synthon Pharmaceuticals Inc. to send Synthon's First Notice Letter to Teva, a Delaware corporation.

137.    Upon information and belief, as a result of Synthon B.V.'s conduct, Synthon will market, sell, and offer for sale its generic version of COPAXONE® 40 mg/mL product in the State of Delaware following FDA approval of that product.

138.    Upon information and belief, as a result of Synthon's marketing, selling, or offering for sale of its generic version of COPAXONE® 40 mg/mL product in the State of Delaware, Teva will lose sales of COPAXONE® 40 mg/mL product and be injured in the State of Delaware.

139.    This Court also has personal jurisdiction over Synthon B.V. under Federal Rule of Civil Procedure 4(k)(2).

140.   Upon information and belief, this Court has personal jurisdiction over Defendant Synthon B.V. for the reasons stated herein, including, *inter alia*, Defendant Synthon B.V.'s activities in the forum, activities directed at the forum, and significant contacts with the forum, all of which render Defendant Synthon B.V. at home in the forum.

141.   Upon information and belief, this Court has personal jurisdiction over Defendant Synthon s.r.o.

142.   Upon information and belief, Defendant Synthon s.r.o. is partnering with Defendant Synthon Pharmaceuticals Inc. to attempt to bring a three-times-a-week generic COPAXONE® (glatiramer acetate injection, 40 mg/mL) to market in the U.S.  *See* http://www.synthon.com/Corporate/News/PressReleases/Synthon-Announces-Filing-of-Glatiramer-Acetate-40-mg-mL-ANDA-Containing-a-Paragraph-IV-Certification, accessed 10/14/14; *see also* "Synthon announces successful outcome of the Phase III GATE study with its generic glatiramer acetate." Business Wire, March 27, 2014.

143.   Upon information and belief, Defendant Synthon s.r.o. collaborated and/or acted in concert with Defendant Synthon Pharmaceuticals Inc. to apply for FDA approval to market and sell a generic version of COPAXONE® 40 mg/mL product throughout the United States, including in Delaware.

144.   Upon information and belief, Defendant Synthon s.r.o. (through its partner subsidiary Defendant Synthon Pharmaceuticals, Inc.) markets, distributes and/or sells generic drugs within the State of Delaware and throughout the United States.

145.   Upon information and belief, Defendant Synthon s.r.o. has engaged in and maintained systematic and continuous business contacts within the State of Delaware, and has

24

purposefully availed itself of the benefits and protections of the laws of Delaware, rendering it at home in Delaware.

146.    Upon information and belief, Defendant Synthon s.r.o. has committed, or aided, abetted, contributed to and/or participated in the commission of, the tortious action of patent infringement that has led to foreseeable harm and injury to Teva, which manufactures COPAXONE® 40 mg/mL product for sale and use throughout the United States, including within the State of Delaware.

147.    Defendant Synthon s.r.o. has applied for FDA approval to market and sell a generic version of COPAXONE® 40 mg/mL product throughout the United States, including in Delaware.

148.    Upon information and belief, Synthon s.r.o. caused its agent Synthon Pharmaceuticals Inc. to send Synthon's Fourth Notice Letter to Teva, a Delaware corporation.

149.    Upon information and belief, as a result of Synthon s.r.o.'s conduct, Synthon will market, sell, and offer for sale its generic version of COPAXONE® 40 mg/mL product in the State of Delaware following FDA approval of that product.

150.    Upon information and belief, as a result of Synthon's marketing, selling, or offering for sale of its generic version of COPAXONE® 40 mg/mL product in the State of Delaware, Teva will lose sales of COPAXONE® 40 mg/mL product and be injured in the State of Delaware.

151.    This Court also has personal jurisdiction over Synthon s.r.o. under Federal Rule of Civil Procedure 4(k)(2).

152.    Upon information and belief, this Court has personal jurisdiction over Defendant Synthon s.r.o. for the reasons stated herein, including, *inter alia*, Defendant Synthon s.r.o.'s

25

activities in the forum, activities directed at the forum, and significant contacts with the forum, all of which render Defendant Synthon s.r.o. at home in the forum.

153.    Upon information and belief, following any FDA approval of Synthon's ANDA, Defendants Synthon Pharmaceuticals Inc., Synthon B.V., and Synthon s.r.o. will work in concert with one another to make, use, offer to sell, and sell a generic version of COPAXONE® 40 mg/mL product throughout the United States, including in Delaware.

154.    Upon information and belief, Synthon B.V. and Synthon s.r.o. will manufacture Synthon's proposed generic version of COPAXONE® 40 mg/mL product on behalf of Synthon Pharmaceuticals Inc. and Synthon Pharmaceuticals Inc. will act as the agent of Synthon B.V. and/or Synthon s.r.o. for sale of that product in the United States, including Delaware.

155.    Upon information and belief, this Court has personal jurisdiction over Defendant Pfizer Inc.

156.    Upon information and belief, Defendant Pfizer Inc. is incorporated in Delaware.

157.    Upon information and belief, Defendant Pfizer Inc. markets, distributes and/or sells pharmaceutical drug products within the State of Delaware and throughout the United States.

158.    Upon information and belief, Defendant Pfizer Inc. has engaged in and maintained systematic and continuous business contacts within the State of Delaware, and has purposefully availed itself of the benefits and protections of the laws of Delaware rendering it at home in Delaware.

159.    Upon information and belief, Defendant Pfizer Inc. has also committed, or aided, abetted, contributed to and/or participated in the commission of, the tortious action of patent infringement that has led to foreseeable harm and injury to Teva, which manufactures

26

COPAXONE® 40 mg/mL product for sale and use throughout the United States, including the State of Delaware.

160.    Upon information and belief, Defendant Pfizer Inc. has entered into an agreement with Synthon B.V. to commercialize a generic version of COPAXONE® 40 mg/mL product throughout the United States, including in Delaware.  *See* http://www.pfizer.com/news/press-release/press-release-detail/pfizer_and_synthon_enter_into_u_s_commercialization_agreement_for_potential_generic_treatment_of_multiple_sclerosis.

161.    Upon information and belief, Pfizer Inc. will market, sell, and offer for sale, in collaboration with Synthon B.V., a proposed generic version of COPAXONE® 40 mg/mL product in the State of Delaware following FDA approval of that product.

162.    Upon information and belief, this Court has personal jurisdiction over Defendant Pfizer Inc. because Pfizer Inc. is incorporated in Delaware.

163.    Upon information and belief, this Court has personal jurisdiction over Defendant Pfizer Inc. for the reasons stated herein, including, *inter alia*, Defendant Pfizer Inc.'s activities in the forum, activities directed at the forum, and significant contacts with the forum, all of which render Defendant Pfizer Inc. at home in the forum.

### Venue

164.    Venue is proper in this Judicial District under 28 U.S.C. § 1400(b) and § 1391.

### BACKGROUND

### The Patents-In-Suit

165.    The '775 patent, entitled "Process for Manufacturing Glatiramer Acetate Product," was duly and legally issued to Teva Ltd. by the United States Patent and Trademark Office on October 13, 2015, and expires on January 28, 2035.  The '775 Patent has 27 claims.

166.    Rakefet Cohen, Sasson Habbah, and Muhammad Safadi are named inventors of the '775 patent.

167.    Teva Ltd. is the sole owner, by assignment, of all rights, title and interest in the '775 patent.

168.    Teva Ltd. has granted Teva USA an exclusive license under the '775 patent to use, offer to sell, sell, and import the COPAXONE® 40 mg/mL product in the United States.

169.    A true and correct copy of the '775 patent is attached as Exhibit A.

170.    The '993 patent, entitled "Process for manufacturing glatiramer acetate product," was duly and legally issued to Teva Ltd. by the United States Patent and Trademark Office on September 19, 2017, and expires on January 28, 2035.  The '993 Patent has 35 claims.

171.    Rakefet Cohen, Sasson Habbah, and Muhammad Safadi are named inventors of the '993 patent.

172.    Teva Ltd. is the sole owner by assignment of all rights, title and interest in the '993 patent.

173.    Teva Ltd. has granted Teva USA an exclusive license under the '993 patent to use, offer to sell, sell, and import the COPAXONE® 40 mg/mL product in the United States.

174.    A true and correct copy of the '993 patent is attached as Exhibit B.

## Teva's COPAXONE® 40 mg/mL Product

175.    Plaintiffs researched, developed, applied for, and obtained FDA approval to manufacture, sell, promote, and/or market COPAXONE® 40 mg/ml product.

176.    Teva USA is the holder of New Drug Application ("NDA") number 20 622, approved by the United States Food and Drug Administration ("FDA") for the use of glatiramer acetate 40 mg/mL three times per week, marketed as COPAXONE® 40 mg/mL, for the

28

treatment of patients with relapsing forms of multiple sclerosis such as relapsing-remitting multiple sclerosis.

177.   Teva's innovative COPAXONE® 40 mg/mL product is supplied as single-dose prefilled syringes that contain 40mg/ml glatiramer acetate for injection, manufactured by Teva Pharmaceutical Industries Ltd., and marketed and sold in the United States by Teva Neuroscience, Inc.

**The Amneal ANDA**

178.   Amneal GmbH, through its U.S. agent Amneal LLC, filed an ANDA under 21 U.S.C. § 355(j) seeking FDA approval to manufacture, use, offer for sale, sell in and import into the United States glatiramer acetate injection, 40 mg/mL, purported to be generic to Teva's COPAXONE® 40mg/mL product ("Amneal's Glatiramer Acetate Product").

179.   FDA assigned the ANDA for Amneal's Glatiramer Acetate Product the number 207553.

180.   Upon information and belief, Amneal LLC and Amneal GmbH submitted, collaborated and/or acted in concert in the preparation or submission of ANDA No. 207553.

181.   In order to be approved by the FDA, the drug product described in an ANDA must be equivalent to the innovator drug product in dosage form, strength, route of administration, quality, performance characteristics, and intended use.

182.   In order to be approved by the FDA, the active ingredient in an ANDA product must be "the same as" the innovator's active ingredient. Thus, generic applicants must scientifically demonstrate that the active ingredient in their product is "the same as" the active ingredient in the innovator's product.

29

183.    Given its complexity, COPAXONE® 40 mg/mL cannot be fully characterized. Moreover, the method of action of COPAXONE® 40 mg/mL has not been fully elucidated. Thus, while COPAXONE® 40 mg/mL has been demonstrated to be a safe and effective treatment for relapsing- remitting multiple sclerosis, the specific attributes of the product responsible for this safe and efficacious treatment have not been fully identified.

184.    It is believed that the method of manufacturing COPAXONE® plays a role in the composition of, and therefore the action and effectiveness of Teva's COPAXONE® 40 mg/mL product.

185.    Upon information and belief, Amneal has begun to manufacture and/or import commercial batches of Amneal's Glatiramer Acetate Product.

186.    Upon information and belief, Amneal must produce their generic glatiramer acetate product using a process that infringes at least one of the claims of each of the patents-in-suit in order for the product to be determined by the FDA to be the same as Teva's COPAXONE® 40 mg/mL and to meet any other requirements for FDA approval of Amneal's Glatiramer Acetate Product.

187.    Upon information and belief, the processes claimed in each of the patents-in-suit are the only commercially feasible means of producing commercial scale quantities of COPAXONE® 40 mg/mL.

188.    Upon information and belief, Amneal intend to launch Amneal's Glatiramer Acetate Product upon receiving FDA approval which may imminently occur, prior to the expiration of each of the patents-in-suit.

## The DRL ANDA

189. DRL filed an ANDA under 21 U.S.C. § 355(j) seeking FDA approval to manufacture, use, offer for sale, sell in and import into the United States glatiramer acetate injection, 40 mg/mL, purported to be generic to Teva's COPAXONE® 40mg/mL product ("DRL's Glatiramer Acetate Product").

190. FDA assigned the ANDA for DRL's Glatiramer Acetate Product the number 206767.

191. Upon information and belief, DRL Inc. and DRL Ltd. submitted, collaborated and/or acted in concert in the preparation or submission of ANDA No. 206767.

192. In order to be approved by the FDA, the drug product described in an ANDA must be equivalent to the innovator drug product in dosage form, strength, route of administration, quality, performance characteristics, and intended use.

193. In order to be approved by the FDA, the active ingredient in an ANDA product must be "the same as" the innovator's active ingredient. Thus, generic applicants must scientifically demonstrate that the active ingredient in their product is "the same as" the active ingredient in the innovator's product.

194. Given its complexity, COPAXONE® 40 mg/mL cannot be fully characterized. Moreover, the method of action of COPAXONE® 40 mg/mL has not been fully elucidated. Thus, while COPAXONE® 40 mg/mL has been demonstrated to be a safe and effective treatment for relapsing- remitting multiple sclerosis, the specific attributes of the product responsible for this safe and efficacious treatment have not been fully identified.

31

195.    It is believed that the method of manufacturing COPAXONE® plays a role in the composition of, and therefore the action and effectiveness of Teva's COPAXONE® 40 mg/mL product.

196.    Upon information and belief, DRL has begun to manufacture and/or import commercial batches of DRL's Glatiramer Acetate Product.

197.    Upon information and belief, DRL must produce their generic glatiramer acetate product using a process that infringes at least one of the claims of each of the patents-in-suit in order for the product to be determined by the FDA to be the same as Teva's COPAXONE® 40 mg/mL and to meet any other requirements for FDA approval of Defendants' Glatiramer Acetate Product.

198.    Upon information and belief, the processes claimed in each of the patents-in-suit are the only commercially feasible means of producing commercial scale quantities of COPAXONE® 40 mg/mL.

199.    Upon information and belief, DRL intends to launch DRL's Glatiramer Acetate Product upon receiving FDA approval which may imminently occur, prior to the expiration of each of the patents-in-suit.  *See* Dr. Reddy's Laboratories Ltd. Q4 FY17 Earning Conference Call May 12, 2017, www.drreddys.com/media/501338/call-transcript-q4fy17.pdf (last visited Oct. 18, 2017) (suggesting potential approval before the end of 2017).

### The Mylan ANDA

200.    Mylan filed an ANDA under 21 U.S.C. § 355(j) seeking FDA approval to manufacture, use, offer for sale, sell in, and import into the United States glatiramer acetate injection, 40 mg/mL, purported to be generic to Teva's COPAXONE® 40 mg/mL product ("Mylan's Glatiramer Acetate Product").

201.    FDA assigned the ANDA for Mylan's Glatiramer Acetate Product the number 206936.

202.    Upon information and belief, Mylan Pharmaceuticals Inc. and Mylan Inc. submitted, collaborated and/or acted in concert in the preparation or submission of ANDA No. 206936.

203.    In order to be approved by the FDA, the drug product described in an ANDA must be equivalent to the innovator drug product in dosage form, strength, route of administration, quality, performance characteristics, and intended use.

204.    In order to be approved by the FDA, the active ingredient in an ANDA product must be "the same as" the innovator's active ingredient. Thus, generic applicants must scientifically demonstrate that the active ingredient in their product is "the same as" the active ingredient in the innovator's product.

205.    Given its complexity, COPAXONE® 40 mg/mL cannot be fully characterized. Moreover, the method of action of COPAXONE® 40 mg/mL has not been fully elucidated. Thus, while COPAXONE® 40 mg/mL has been demonstrated to be a safe and effective treatment for relapsing-remitting multiple sclerosis, the specific attributes of the product responsible for this safe and efficacious treatment have not been fully identified.

206.    It is believed that the method of manufacturing COPAXONE® plays a role in the composition of, and therefore the action and effectiveness of Teva's COPAXONE® 40 mg/mL product.

207.    Upon information and belief, Mylan has begun to manufacture and/or import commercial batches of Mylan's Glatiramer Acetate Product.

33

208. Upon information and belief, Mylan must produce their generic glatiramer acetate product using a process that infringes at least one of the claims of each of the patents-in-suit in order for the product to be determined by the FDA to be the same as Teva's COPAXONE® 40 mg/mL and to meet any other requirements for FDA approval of Mylan's Glatiramer Acetate Product.

209. Upon information and belief, the processes claimed in the patents-in-suit are the only commercially feasible means of producing commercial scale quantities of COPAXONE® 40 mg/mL.

210. Upon information and belief, Mylan received FDA approval on October 3, 2017 and has begun marketing and selling Mylan's Glatiramer Acetate Product.

### The Sandoz ANDA

211. Sandoz filed an ANDA under 21 U.S.C. § 355(j) seeking FDA approval to manufacture, use, offer for sale, sell in and import into the United States glatiramer acetate injection, 40 mg/mL, purported to be generic to Teva's COPAXONE® 40 mg/mL product ("Sandoz's Glatiramer Acetate Product").

212. FDA assigned the ANDA for Sandoz's Glatiramer Acetate Product the number 206921.

213. Upon information and belief, Sandoz submitted, collaborated and/or acted in concert in the preparation or submission of ANDA No. 206921.

214. In order to be approved by the FDA, the drug product described in an ANDA must be equivalent to the innovator drug product in dosage form, strength, route of administration, quality, performance characteristics, and intended use.

34

215. In order to be approved by the FDA, the active ingredient in an ANDA product must be "the same as" the innovator's active ingredient. Thus, generic applicants must scientifically demonstrate that the active ingredient in their product is "the same as" the active ingredient in the innovator's product.

216. Given its complexity, COPAXONE® 40 mg/mL cannot be fully characterized. Moreover, the method of action of COPAXONE® 40 mg/mL has not been fully elucidated. Thus, while COPAXONE® 40 mg/mL has been demonstrated to be a safe and effective treatment for relapsing- remitting multiple sclerosis, the specific attributes of the product responsible for this safe and efficacious treatment have not been fully identified.

217. It is believed that the method of manufacturing COPAXONE® plays a role in the composition of, and therefore the action and effectiveness of Teva's COPAXONE® 40 mg/mL product.

218. Upon information and belief, Sandoz has begun to manufacture and/or import commercial batches of Sandoz's Glatiramer Acetate Product.

219. Upon information and belief, Sandoz must produce their generic glatiramer acetate product using a process that infringes at least one of the claims of each of the patents-in-suit in order for the product to be determined by the FDA to be the same as Teva's COPAXONE® 40 mg/mL and to meet any other requirements for FDA approval of Sandoz's Glatiramer Acetate Product.

220. Upon information and belief, the processes claimed in each of the patents-in-suit are the only commercially feasible means of producing commercial scale quantities of COPAXONE® 40 mg/mL.

221.    Upon information and belief, Sandoz intend to launch Sandoz's Glatiramer Acetate Product upon receiving FDA approval which may imminently occur, prior to the expiration of each of the patents-in-suit.  *See* Momenta Pharmaceuticals Reports Second Quarter 2017 Financial Results and Provides Corporate Update, https://globenewswire.com/news-release/2017/08/02/1070883/0/en/Momenta-Pharmaceuticals-Reports-Second-Quarter-2017-Financial-Results-and-Provides-Corporate-Update.html  (last visited Oct. 18, 2017) ("'We remain optimistic that we could see a potential Glatopa 40 mg approval and launch into the marketplace in the 2017 timeframe,' said Craig A. Wheeler, President and Chief Executive Officer of Momenta Pharmaceuticals.")

### The Synthon ANDA

222.    Synthon filed an ANDA under 21 U.S.C. § 355(j) seeking FDA approval to manufacture, use, offer for sale, sell in and import into the United States glatiramer acetate injection, 40 mg/mL, purported to be generic to Teva's COPAXONE® 40 mg/mL product ("Synthon's Glatiramer Acetate Product").

223.    FDA assigned the ANDA for Synthon's Glatiramer Acetate Product the number 206873.

224.    Upon information and belief, Synthon submitted, collaborated and/or acted in concert in the preparation or submission of ANDA No. 206873.

225.    In order to be approved by the FDA, the drug product described in an ANDA must be equivalent to the innovator drug product in dosage form, strength, route of administration, quality, performance characteristics, and intended use.

226.    In order to be approved by the FDA, the active ingredient in an ANDA product must be "the same as" the innovator's active ingredient. Thus, generic applicants must

scientifically demonstrate that the active ingredient in their product is "the same as" the active ingredient in the innovator's product.

227.    Given its complexity, COPAXONE® 40 mg/mL cannot be fully characterized. Moreover, the method of action of COPAXONE® 40 mg/mL has not been fully elucidated. Thus, while COPAXONE® 40 mg/mL has been demonstrated to be a safe and effective treatment for relapsing- remitting multiple sclerosis, the specific attributes of the product responsible for this safe and efficacious treatment have not been fully identified.

228.    It is believed that the method of manufacturing COPAXONE® plays a role in the composition of, and therefore the action and effectiveness of Teva's COPAXONE® 40 mg/mL product.

229.    Upon information and belief, Synthon has begun to manufacture and/or import commercial batches of Synthon's Glatiramer Acetate Product.

230.    Upon information and belief, Synthon must produce their generic glatiramer acetate product using a process that infringes at least one of the claims of each of the patents-in-suit in order for the product to be determined by the FDA to be the same as Teva's COPAXONE® 40 mg/mL and to meet any other requirements for FDA approval of Synthon's Glatiramer Acetate Product.

231.    Upon information and belief, the processes claimed in each of the patents-in-suit are the only commercially feasible means of producing commercial scale quantities of COPAXONE® 40 mg/mL.

232.    Upon information and belief, Synthon intend to launch Synthon's Glatiramer Acetate Product upon receiving FDA approval which may imminently occur, prior to the expiration of each of the patents-in-suit.

**COUNT I FOR INFRINGEMENT OF U.S. PATENT NO. 9,155,775 BY AMNEAL**

233.    The allegations of the proceeding paragraphs 1-232 are realleged and incorporated herein by reference.

234.    Upon information and belief, Amneal LLC currently infringes and has infringed one or more claims of the '775 patent under at least sections (a)-(c) and/or (g) of 35 U.S.C. § 271 by the manufacture, marketing, sale, offer to sell and/or importation of the Amneal's Glatiramer Acetate Product.

235.    Upon information and belief, Amneal GmbH currently infringes and has infringed one or more claims of the '775 patent under at least sections (a)-(c) and/or (g) of 35 U.S.C. § 271 by the manufacture, marketing, sale, offer to sell and/or importation of the Amneal's Glatiramer Acetate Product.

236.    Upon information and belief, Amneal has acted in concert by assisting with, participating in, encouraging, contributing, aiding and abetting and/or directing the manufacture, marketing, sale, offer to sell and/or importation of the Amneal's Glatiramer Acetate Product.

237.    Upon information and belief, Amneal's infringement is willful and continues despite knowledge of the '775 patent.  Upon information and belief, Amneal acted without a reasonable basis for believing that they would not be liable for infringing the '775 patent.

**COUNT II FOR DECLARATORY JUDGMENT OF INFRINGEMENT OF U.S. PATENT NO. 9,155,775 BY AMNEAL**

238.    The allegations of the proceeding paragraphs 1-237 are realleged and incorporated herein by reference.

239.    Upon information and belief, Amneal intend to manufacture, market, sell, offer to sell and/or import Amneal's Glatiramer Acetate product upon receiving FDA approval, which may imminently occur.

38

240.    Such conduct will constitute direct infringement of the '775 patent under 35 U.S.C. § 271(a), inducement of infringement of the '775 patent under 35 U.S.C. § 271(b), contributory infringement under 35 U.S.C. § 271(c), and/or infringement of the '775 patent under 35 U.S.C. § 271(g).

241.    As a result of the foregoing facts, there is an imminent, real, substantial, and continuing justiciable controversy between Teva and Amneal as to liability for the infringement of the '775 patent. Amneal's actions have created in Teva a reasonable apprehension of irreparable harm and loss resulting from Amneal's threatened imminent actions.

242.    Upon information and belief, Amneal will knowingly and willfully infringe the '775 patent.

243.    Teva will be substantially and irreparably harmed by Amneal's infringing activities unless the Court enjoins those activities. Teva will have no adequate remedy at law if Amneal is not enjoined from the commercial manufacture, use, offer to sell, sale in and importation into the United States of the Amneal's Glatiramer Acetate Product.  Amneal's activities render this case an exceptional one, and Teva is entitled to an award of their reasonable attorneys' fees under 35 U.S.C. § 285.

**COUNT III FOR INFRINGEMENT OF U.S. PATENT NO. 9,763,993 BY AMNEAL**

244.    The allegations of the proceeding paragraphs 1-243 are realleged and incorporated herein by reference.

245.    Upon information and belief, Amneal LLC currently infringes and has infringed one or more claims of the '993 patent under at least sections (a)-(c) and/or (g) of 35 U.S.C. § 271 by the manufacture, marketing, sale, offer to sell and/or importation of the Amneal's Glatiramer Acetate Product.

246.    Upon information and belief, Amneal GmbH currently infringes and has infringed one or more claims of the '993 patent under at least sections (a)-(c) and/or (g) of 35 U.S.C. § 271 by the manufacture, marketing, sale, offer to sell and/or importation of the Amneal's Glatiramer Acetate Product.

247.    Upon information and belief, Amneal has acted in concert by assisting with, participating in, encouraging, contributing, aiding and abetting and/or directing the manufacture, marketing, sale, offer to sell and/or importation of the Amneal's Glatiramer Acetate Product.

248.    Upon information and belief, Amneal's infringement is willful and continues despite knowledge of the '993 patent.  Upon information and belief, Amneal acted without a reasonable basis for believing that they would not be liable for infringing the '993 patent.

## COUNT IV FOR DECLARATORY JUDGMENT OF INFRINGEMENT OF U.S. PATENT NO. 9,763,993 BY AMNEAL

249.    The allegations of the proceeding paragraphs 1-248 are realleged and incorporated herein by reference.

250.    Upon information and belief, Amneal intend to manufacture, market, sell, offer to sell and/or import Amneal's Glatiramer Acetate product upon receiving FDA approval, which may imminently occur.

251.    Such conduct will constitute direct infringement of the '993 patent under 35 U.S.C. § 271(a), inducement of infringement of the '993 patent under 35 U.S.C. § 271(b), contributory infringement under 35 U.S.C. § 271(c), and/or infringement of the '993 patent under 35 U.S.C. § 271(g).

252.    As a result of the foregoing facts, there is an imminent, real, substantial, and continuing justiciable controversy between Teva and Amneal as to liability for the infringement

40

of the '993 patent. Amneal's actions have created in Teva a reasonable apprehension of irreparable harm and loss resulting from Amneal's threatened imminent actions.

253.    Upon information and belief, Amneal will knowingly and willfully infringe the '993 patent.

254.    Teva will be substantially and irreparably harmed by Amneal's infringing activities unless the Court enjoins those activities. Teva will have no adequate remedy at law if Amneal is not enjoined from the commercial manufacture, use, offer to sell, sale in and importation into the United States of the Amneal's Glatiramer Acetate Product. Amneal's activities render this case an exceptional one, and Teva is entitled to an award of their reasonable attorneys' fees under 35 U.S.C. § 285.

**COUNT V FOR INFRINGEMENT OF U.S. PATENT NO. 9,155,775 BY DRL**

255.    The allegations of the proceeding paragraphs 1-254 are realleged and incorporated herein by reference.

256.    Upon information and belief, DRL Ltd. currently infringes and has infringed one or more claims of the '775 patent under at least sections (a)-(c) and/or (g) of 35 U.S.C. § 271 by the manufacture, marketing, sale, offer to sell and/or importation of the DRL's Glatiramer Acetate Product.

257.    Upon information and belief, DRL Inc. currently infringes and has infringed one or more claims of the '775 patent under at least sections (a)-(c) and/or (g) of 35 U.S.C. § 271 by the manufacture, marketing, sale, offer to sell and/or importation of the DRL's Glatiramer Acetate Product.

258.    Upon information and belief, DRL has acted in concert by assisting with, participating in, encouraging, contributing, aiding and abetting and/or directing the manufacture, marketing, sale, offer to sell and/or importation of the DRL's Glatiramer Acetate Product.

41

259. Upon information and belief, DRL's infringement is willful and continues despite knowledge of the '775 patent.  Upon information and belief, DRL acted without a reasonable basis for believing that they would not be liable for infringing the '775 patent.

## COUNT VI FOR DECLARATORY JUDGMENT OF INFRINGEMENT OF U.S. PATENT NO. 9,155,775 BY DRL

260. The allegations of the proceeding paragraphs 1-259 are realleged and incorporated herein by reference.

261. Upon information and belief, DRL intend to manufacture, market, sell, offer to sell and/or import DRL's Glatiramer Acetate product upon receiving FDA approval, which may imminently occur.

262. Such conduct will constitute direct infringement of the '775 patent under 35 U.S.C. § 271(a), inducement of infringement of the '775 patent under 35 U.S.C. § 271(b), contributory infringement under 35 U.S.C. § 271(c), and/or infringement of the '775 patent under 35 U.S.C. § 271(g).

263. As a result of the foregoing facts, there is an imminent, real, substantial, and continuing justiciable controversy between Teva and DRL as to liability for the infringement of the '775 patent.  DRL's actions have created in Teva a reasonable apprehension of irreparable harm and loss resulting from DRL's threatened imminent actions.

264. Upon information and belief, DRL will knowingly and willfully infringe the '775 patent.

265. Teva will be substantially and irreparably harmed by DRL's infringing activities unless the Court enjoins those activities. Teva will have no adequate remedy at law if DRL is not enjoined from the commercial manufacture, use, offer to sell, sale in and importation into the United States of the DRL's Glatiramer Acetate Product.  DRL's activities render this case an

42

exceptional one, and Teva is entitled to an award of their reasonable attorneys' fees under 35 U.S.C. § 285.

### COUNT VII FOR INFRINGEMENT OF U.S. PATENT NO. 9,763,993 BY DRL

266.    The allegations of the proceeding paragraphs 1-265 are realleged and incorporated herein by reference.

267.    Upon information and belief, DRL Ltd. currently infringes and has infringed one or more claims of the '993 patent under at least sections (a)-(c) and/or (g) of 35 U.S.C. § 271 by the manufacture, marketing, sale, offer to sell and/or importation of the DRL's Glatiramer Acetate Product.

268.    Upon information and belief, DRL Inc. currently infringes and has infringed one or more claims of the '993 patent under at least sections (a)-(c) and/or (g) of 35 U.S.C. § 271 by the manufacture, marketing, sale, offer to sell and/or importation of the DRL's Glatiramer Acetate Product.

269.    Upon information and belief, DRL has acted in concert by assisting with, participating in, encouraging, contributing, aiding and abetting and/or directing the manufacture, marketing, sale, offer to sell and/or importation of the DRL's Glatiramer Acetate Product.

270.    Upon information and belief, DRL's infringement is willful and continues despite knowledge of the '993 patent.  Upon information and belief, DRL acted without a reasonable basis for believing that they would not be liable for infringing the '993 patent.

### COUNT VIII FOR DECLARATORY JUDGMENT OF INFRINGEMENT OF U.S. PATENT NO. 9,763,993 BY DRL

271.    The allegations of the proceeding paragraphs 1-270 are realleged and incorporated herein by reference.

43

272.    Upon information and belief, DRL intend to manufacture, market, sell, offer to sell and/or import DRL's Glatiramer Acetate product upon receiving FDA approval, which may imminently occur.

273.    Such conduct will constitute direct infringement of the '993 patent under 35 U.S.C. § 271(a), inducement of infringement of the '993 patent under 35 U.S.C. § 271(b), contributory infringement under 35 U.S.C. § 271(c), and/or infringement of the '993 patent under 35 U.S.C. § 271(g).

274.    As a result of the foregoing facts, there is an imminent, real, substantial, and continuing justiciable controversy between Teva and DRL as to liability for the infringement of the '993 patent.  DRL's actions have created in Teva a reasonable apprehension of irreparable harm and loss resulting from DRL's threatened imminent actions.

275.    Upon information and belief, DRL will knowingly and willfully infringe the '993 patent.

276.    Teva will be substantially and irreparably harmed by DRL's infringing activities unless the Court enjoins those activities. Teva will have no adequate remedy at law if DRL is not enjoined from the commercial manufacture, use, offer to sell, sale in and importation into the United States of the DRL's Glatiramer Acetate Product.  DRL's activities render this case an exceptional one, and Teva is entitled to an award of their reasonable attorneys' fees under 35 U.S.C. § 285.

**COUNT IX FOR INFRINGEMENT OF U.S. PATENT NO. 9,155,775 BY MYLAN**

277.    The allegations of the proceeding paragraphs 1-276 are realleged and incorporated herein by reference.

278.    Upon information and belief, Mylan Inc. currently infringes and has infringed one or more claims of the '775 patent under at least sections (a)-(c) and/or (g) of 35 U.S.C. § 271 by

44

the manufacture, marketing, sale, offer to sell, and/or importation of the Mylan's Glatiramer Acetate Product.

279.    Upon information and belief, Mylan Pharmaceuticals Inc. currently infringes and has infringed one or more claims of the '775 patent under at least sections (a)-(c) and/or (g) of 35 U.S.C. § 271 by the manufacture, marketing, sale, offer to sell, and/or importation of the Mylan's Glatiramer Acetate Product.

280.    Upon information and belief, Mylan has acted in concert by assisting with, participating in, encouraging, contributing, aiding and abetting, and/or directing the manufacture, marketing, sale, offer to sell and/or importation of the Mylan's Glatiramer Acetate Product.

281.    Upon information and belief, Mylan's infringement is willful and continues despite knowledge of the '775 patent.  Upon information and belief, Mylan acted without a reasonable basis for believing that they would not be liable for infringing the '775 patent.

282.    Mylan's acts of infringement have caused damage to Teva, and Teva is entitled to recover from Mylan the damages sustained by Teva as a result of Mylan's wrongful acts in an amount subject to proof at trial.  Mylan's infringement of Teva's exclusive rights under the '775 patent will continue to damage Teva's business, causing irreparable harm for which there is no adequate remedy at law, unless Mylan is enjoined by this Court.

**COUNT X FOR INFRINGEMENT OF U.S. PATENT NO. 9,763,993 BY MYLAN**

283.    The allegations of the proceeding paragraphs 1-282 are realleged and incorporated herein by reference.

284.    Upon information and belief, Mylan Inc. currently infringes and has infringed one or more claims of the '993 patent under at least sections (a)-(c) and/or (g) of 35 U.S.C. § 271 by the manufacture, marketing, sale, offer to sell, and/or importation of the Mylan's Glatiramer Acetate Product.

45

285.    Upon information and belief, Mylan Pharmaceuticals Inc. currently infringes and has infringed one or more claims of the '993 patent under at least sections (a)-(c) and/or (g) of 35 U.S.C. § 271 by the manufacture, marketing, sale, offer to sell, and/or importation of the Mylan's Glatiramer Acetate Product.

286.    Upon information and belief, Mylan has acted in concert by assisting with, participating in, encouraging, contributing, aiding and abetting, and/or directing the manufacture, marketing, sale, offer to sell, and/or importation of the Mylan's Glatiramer Acetate Product.

287.    Upon information and belief, Mylan's infringement is willful and continues despite knowledge of the '993 patent.  Upon information and belief, Mylan acted without a reasonable basis for believing that they would not be liable for infringing the '993 patent.

288.    Mylan's acts of infringement have caused damage to Teva, and Teva is entitled to recover from Mylan the damages sustained by Teva as a result of Mylan's wrongful acts in an amount subject to proof at trial.  Mylan's infringement of Teva's exclusive rights under the '993 patent will continue to damage Teva's business, causing irreparable harm for which there is no adequate remedy at law, unless Mylan is enjoined by this Court.

## COUNT XI FOR INFRINGEMENT OF U.S. PATENT NO. 9,155,775 BY SANDOZ

289.    The allegations of the proceeding paragraphs 1-288 are realleged and incorporated herein by reference.

290.    Upon information and belief, Sandoz Inc. currently infringes and has infringed one or more claims of the '775 patent under at least sections (a)-(c) and/or (g) of 35 U.S.C. § 271 by the manufacture, marketing, sale, offer to sell and/or importation of the Sandoz's Glatiramer Acetate Product.

291.    Upon information and belief, Sandoz has acted in concert by assisting with, participating in, encouraging, contributing, aiding and abetting and/or directing the manufacture, marketing, sale, offer to sell and/or importation of the Sandoz's Glatiramer Acetate Product.

292.    Upon information and belief, Sandoz's infringement is willful and continues despite knowledge of the '775 patent.  Upon information and belief, Sandoz acted without a reasonable basis for believing that they would not be liable for infringing the '775 patent.

## COUNT XII FOR DECLARATORY JUDGMENT OF INFRINGEMENT OF U.S. PATENT NO. 9,155,775 BY SANDOZ

293.    The allegations of the proceeding paragraphs 1-292 are realleged and incorporated herein by reference.

294.    Upon information and belief, Sandoz intend to manufacture, market, sell, offer to sell and/or import Sandoz's Glatiramer Acetate product upon receiving FDA approval, which may imminently occur.

295.    Such conduct will constitute direct infringement of the '775 patent under 35 U.S.C. § 271(a), inducement of infringement of the '775 patent under 35 U.S.C. § 271(b), contributory infringement under 35 U.S.C. § 271(c), and/or infringement of the '775 patent under 35 U.S.C. § 271(g).

296.    As a result of the foregoing facts, there is an imminent, real, substantial, and continuing justiciable controversy between Teva and Sandoz as to liability for the infringement of the '775 patent.  Sandoz's actions have created in Teva a reasonable apprehension of irreparable harm and loss resulting from Sandoz's threatened imminent actions.

297.    Upon information and belief, Sandoz will knowingly and willfully infringe the '775 patent.

298.    Teva will be substantially and irreparably harmed by Sandoz's infringing activities unless the Court enjoins those activities. Teva will have no adequate remedy at law if Sandoz is not enjoined from the commercial manufacture, use, offer to sell, sale in and importation into the United States of the Sandoz's Glatiramer Acetate Product.   Sandoz's activities render this case an exceptional one, and Teva is entitled to an award of their reasonable attorneys' fees under 35 U.S.C. § 285.

### COUNT XIII FOR INFRINGEMENT OF U.S. PATENT NO. 9,763,993 BY SANDOZ

299.    The allegations of the proceeding paragraphs 1-298 are realleged and incorporated herein by reference.

300.    Upon information and belief, Sandoz Inc. currently infringes and has infringed one or more claims of the '993 patent under at least sections (a)-(c) and/or (g) of 35 U.S.C. § 271 by the manufacture, marketing, sale, offer to sell and/or importation of the Sandoz's Glatiramer Acetate Product.

301.    Upon information and belief, Sandoz has acted in concert by assisting with, participating in, encouraging, contributing, aiding and abetting and/or directing the manufacture, marketing, sale, offer to sell and/or importation of the Sandoz's Glatiramer Acetate Product.

302.    Upon information and belief, Sandoz's infringement is willful and continues despite knowledge of the '993 patent.  Upon information and belief, Sandoz acted without a reasonable basis for believing that they would not be liable for infringing the '993 patent.

### COUNT XIV FOR DECLARATORY JUDGMENT OF INFRINGEMENT OF U.S. PATENT NO. 9,763,993 BY SANDOZ

303.    The allegations of the proceeding paragraphs 1-302 are realleged and incorporated herein by reference.

304.    Upon information and belief, Sandoz intend to manufacture, market, sell, offer to sell and/or import Sandoz's Glatiramer Acetate product upon receiving FDA approval, which may imminently occur.

305.    Such conduct will constitute direct infringement of the '993 patent under 35 U.S.C. § 271(a), inducement of infringement of the '993 patent under 35 U.S.C. § 271(b), contributory infringement under 35 U.S.C. § 271(c), and/or infringement of the '993 patent under 35 U.S.C. § 271(g).

306.    As a result of the foregoing facts, there is an imminent, real, substantial, and continuing justiciable controversy between Teva and Sandoz as to liability for the infringement of the '993 patent.  Sandoz's actions have created in Teva a reasonable apprehension of irreparable harm and loss resulting from Sandoz's threatened imminent actions.

307.    Upon information and belief, Sandoz will knowingly and willfully infringe the '993 patent.

308.    Teva will be substantially and irreparably harmed by Sandoz's infringing activities unless the Court enjoins those activities. Teva will have no adequate remedy at law if Sandoz is not enjoined from the commercial manufacture, use, offer to sell, sale in and importation into the United States of the Sandoz's Glatiramer Acetate Product.   Sandoz's activities render this case an exceptional one, and Teva is entitled to an award of their reasonable attorneys' fees under 35 U.S.C. § 285.

**COUNT XV FOR INFRINGEMENT OF U.S. PATENT NO. 9,155,775 BY SYNTHON**

309.    The allegations of the proceeding paragraphs 1-308 are realleged and incorporated herein by reference.

310.    Upon information and belief, Synthon Pharmaceuticals Inc.currently infringes and has infringed one or more claims of the '775 patent under at least sections (a)-(c) and/or (g) of 35

U.S.C. § 271 by the manufacture, marketing, sale, offer to sell and/or importation of the Synthon's Glatiramer Acetate Product.

311.    Upon information and belief, Synthon B.V. currently infringes and has infringed one or more claims of the '775 patent under at least sections (a)-(c) and/or (g) of 35 U.S.C. § 271 by the manufacture, marketing, sale, offer to sell and/or importation of the Synthon's Glatiramer Acetate Product.

312.    Upon information and belief, Synthon s.r.o. currently infringes and has infringed one or more claims of the '775 patent under at least sections (a)-(c) and/or (g) of 35 U.S.C. § 271 by the manufacture, marketing, sale, offer to sell and/or importation of the Synthon's Glatiramer Acetate Product.

313.    Upon information and belief, Pfizer, Inc. currently infringes and has infringed one or more claims of the '775 patent under at least sections (a)-(c) and/or (g) of 35 U.S.C. § 271 by the manufacture, marketing, sale, offer to sell and/or importation of the Synthon's Glatiramer Acetate Product.

314.    Upon information and belief, Synthon has acted in concert by assisting with, participating in, encouraging, contributing, aiding and abetting and/or directing the manufacture, marketing, sale, offer to sell and/or importation of the Synthon's Glatiramer Acetate Product.

315.    Upon information and belief, Synton's infringement is willful and continues despite knowledge of the '775 patent.  Upon information and belief, Synthon acted without a reasonable basis for believing that they would not be liable for infringing the '993 patent.

**COUNT XVI FOR DECLARATORY JUDGMENT OF  INFRINGEMENT OF U.S. PATENT NO. 9,155,775 BY SYNTHON**

316.    The allegations of the proceeding paragraphs 1-315 are realleged and incorporated herein by reference.

317.    Upon information and belief, Synthon intend to manufacture, market, sell, offer to sell and/or import Synthon's Glatiramer Acetate product upon receiving FDA approval, which may imminently occur.

318.    Such conduct will constitute direct infringement of the '775 patent under 35 U.S.C. § 271(a), inducement of infringement of the '775 patent under 35 U.S.C. § 271(b), contributory infringement under 35 U.S.C. § 271(c), and/or infringement of the '775 patent under 35 U.S.C. § 271(g).

319.    As a result of the foregoing facts, there is an imminent, real, substantial, and continuing justiciable controversy between Teva and Synthon as to liability for the infringement of the '775 patent. Synthon's actions have created in Teva a reasonable apprehension of irreparable harm and loss resulting from Synthon's threatened imminent actions.

320.    Upon information and belief, Synthon will knowingly and willfully infringe the '775 patent.

321.    Teva will be substantially and irreparably harmed by Synthon's infringing activities unless the Court enjoins those activities. Teva will have no adequate remedy at law if Synthon is not enjoined from the commercial manufacture, use, offer to sell, sale in and importation into the United States of the Synthon's Glatiramer Acetate Product.   Synthon's activities render this case an exceptional one, and Teva is entitled to an award of their reasonable attorneys' fees under 35 U.S.C. § 285.

**COUNT XVII FOR INFRINGEMENT OF U.S. PATENT NO. 9,763,993 BY SYNTHON**

322.    The allegations of the proceeding paragraphs 1-321 are realleged and incorporated herein by reference.

323.    Upon information and belief, Synthon Pharmaceuticals Inc.currently infringes and has infringed one or more claims of the '993 patent under at least sections (a)-(c) and/or (g) of 35

51

U.S.C. § 271 by the manufacture, marketing, sale, offer to sell and/or importation of the Synthon's Glatiramer Acetate Product.

324. Upon information and belief, Synthon B.V. currently infringes and has infringed one or more claims of the '993 patent under at least sections (a)-(c) and/or (g) of 35 U.S.C. § 271 by the manufacture, marketing, sale, offer to sell and/or importation of the Synthon's Glatiramer Acetate Product.

325. Upon information and belief, Synthon s.r.o. currently infringes and has infringed one or more claims of the '993 patent under at least sections (a)-(c) and/or (g) of 35 U.S.C. § 271 by the manufacture, marketing, sale, offer to sell and/or importation of the Synthon's Glatiramer Acetate Product.

326. Upon information and belief, Pfizer, Inc. currently infringes and has infringed one or more claims of the '993 patent under at least sections (a)-(c) and/or (g) of 35 U.S.C. § 271 by the manufacture, marketing, sale, offer to sell and/or importation of the Synthon's Glatiramer Acetate Product.

327. Upon information and belief, Synthon has acted in concert by assisting with, participating in, encouraging, contributing, aiding and abetting and/or directing the manufacture, marketing, sale, offer to sell and/or importation of the Synthon's Glatiramer Acetate Product.

328. Upon information and belief, Synton's infringement is willful and continues despite knowledge of the '993 patent. Upon information and belief, Synthon acted without a reasonable basis for believing that they would not be liable for infringing the '993 patent.

**COUNT XVIII FOR DECLARATORY JUDGMENT OF INFRINGEMENT OF U.S. PATENT NO. 9,763,993 BY SYNTHON**

329. The allegations of the proceeding paragraphs 1-328 are realleged and incorporated herein by reference.

330.    Upon information and belief, Synthon intend to manufacture, market, sell, offer to sell and/or import Synthon's Glatiramer Acetate product upon receiving FDA approval, which may imminently occur.

331.    Such conduct will constitute direct infringement of the '993 patent under 35 U.S.C. § 271(a), inducement of infringement of the '993 patent under 35 U.S.C. § 271(b), contributory infringement under 35 U.S.C. § 271(c), and/or infringement of the '993 patent under 35 U.S.C. § 271(g).

332.    As a result of the foregoing facts, there is an imminent, real, substantial, and continuing justiciable controversy between Teva and Synthon as to liability for the infringement of the '993 patent. Synthon's actions have created in Teva a reasonable apprehension of irreparable harm and loss resulting from Synthon's threatened imminent actions.

333.    Upon information and belief, Synthon will knowingly and willfully infringe the '993 patent.

334.    Teva will be substantially and irreparably harmed by Synthon's infringing activities unless the Court enjoins those activities. Teva will have no adequate remedy at law if Synthon is not enjoined from the commercial manufacture, use, offer to sell, sale in and importation into the United States of the Synthon's Glatiramer Acetate Product.   Synthon's activities render this case an exceptional one, and Teva is entitled to an award of their reasonable attorneys' fees under 35 U.S.C. § 285.

**PRAYER FOR RELIEF**

WHEREFORE, Teva respectfully request the following relief:

**Against all Defendants**

(a)   a judgment that the '775 patent is valid and enforceable;

(b)   a judgment that the '993 patent is valid and enforceable;

**Against Amneal**

(c) judgment that the making, using, offering to sell, selling, marketing, distributing, or importing of Amneal's Glatiramer Acetate Product prior to the expiration of the '775 patent will infringe, actively induce infringement, and/or contribute to the infringement of one or more claims of the '775 patent;

(d) judgment that the making, using, offering to sell, selling, marketing, distributing, or importing of Amneal's Glatiramer Acetate Product prior to the expiration of the '993 patent will infringe, actively induce infringement, and/or contribute to the infringement of one or more claims of the '993 patent;

(e) an Order pursuant to 35 U.S.C. § 283 preliminarily and permanently enjoining Amneal and all persons acting in concert with Amneal from commercially manufacturing, using, offering for sale, selling, marketing, distributing, or importing Amneal's Glatiramer Acetate Product, or any product or compound the use or manufacture of which infringes the '775 patent, or inducing or contributing to the infringement of the '775 patent until after the expiration of the '775 patent;

(f) an Order pursuant to 35 U.S.C. § 283 preliminarily and permanently enjoining Amneal and all persons acting in concert with Amneal from commercially manufacturing, using, offering for sale, selling, marketing, distributing, or importing Amneal's Glatiramer Acetate Product, or any product or compound the use or manufacture of which infringes the '993 patent, or inducing or contributing to the infringement of the '993 patent until after the expiration of the '993 patent;

(g) an award of Teva's damages or other monetary relief to compensate Teva if Amneal engages in the commercial manufacture, use, offer to sell, sale, or marketing or distribution in, or

54

importation into the United States of Amneal's Glatiramer Acetate Product, or any product or compound the use or manufacture of which infringes the '775 patent, or the inducement or contribution of the foregoing, prior to the expiration of the '775 patent in accordance with 35 U.S.C. § 284;

(h)   an award of Teva's damages or other monetary relief to compensate Teva if Amneal engages in the commercial manufacture, use, offer to sell, sale, or marketing or distribution in, or importation into the United States of Amneal's Glatiramer Acetate Product, or any product or compound the use or manufacture of which infringes the '993 patent, or the inducement or contribution of the foregoing, prior to the expiration of the '993 patent in accordance with 35 U.S.C. § 284;

(i)   a judgment that this is an exceptional case and an award to Teva of its attorneys' fees under 35 U.S.C. § 285;

(j)   a judgment that Amneal's infringement of the '775 patent is willful;

(k)   a judgment that Amneal's infringement of the '993 patent is willful;

(l)   an award of Teva's reasonable costs and expenses in this action; and

(m)  an award of any further and additional relief to Teva as this Court deems just and proper.

### Against DRL

(n)   judgment that the making, using, offering to sell, selling, marketing, distributing, or importing of DRL's Glatiramer Acetate Product prior to the expiration of the '775 patent will infringe, actively induce infringement, and/or contribute to the infringement of one or more claims of the '775 patent;

(o)   judgment that the making, using, offering to sell, selling, marketing, distributing, or importing of DRL's Glatiramer Acetate Product prior to the expiration of the '993 patent will infringe, actively induce infringement, and/or contribute to the infringement of one or more claims of the '993 patent;

(p)   an Order pursuant to 35 U.S.C. § 283 preliminarily and permanently enjoining DRL and all persons acting in concert with DRL from commercially manufacturing, using, offering for sale, selling, marketing, distributing, or importing DRL's Glatiramer Acetate Product, or any product or compound the use or manufacture of which infringes the '775 patent, or inducing or contributing to the infringement of the '775 patent until after the expiration of the '775 patent;

(q)   an Order pursuant to 35 U.S.C. § 283 preliminarily and permanently enjoining DRLand all persons acting in concert with DRL from commercially manufacturing, using, offering for sale, selling, marketing, distributing, or importing DRL's Glatiramer Acetate Product, or any product or compound the use or manufacture of which infringes the '993 patent, or inducing or contributing to the infringement of the '993 patent until after the expiration of the '993 patent;

(r)   an award of Teva's damages or other monetary relief to compensate Teva if DRL engages in the commercial manufacture, use, offer to sell, sale, or marketing or distribution in, or importation into the United States of DRL's Glatiramer Acetate Product, or any product or compound the use or manufacture of which infringes the '775 patent, or the inducement or contribution of the foregoing, prior to the expiration of the '775 patent in accordance with 35 U.S.C. § 284;

(s)   an award of Teva's damages or other monetary relief to compensate Teva if DRL engages in the commercial manufacture, use, offer to sell, sale, or marketing or distribution in, or

56

importation into the United States of DRL's Glatiramer Acetate Product, or any product or compound the use or manufacture of which infringes the '993 patent, or the inducement or contribution of the foregoing, prior to the expiration of the '993 patent in accordance with 35 U.S.C. § 284;

(t)   a judgment that this is an exceptional case and an award to Teva of its attorneys' fees under 35 U.S.C. § 285;

(u)   a judgment that DRL's infringement of the '775 patent is willful;

(v)   a judgment that DRL's infringement of the '993 patent is willful;

(w)   an award of Teva's reasonable costs and expenses in this action; and

(x)   an award of any further and additional relief to Teva as this Court deems just and proper.

**<u>Against Mylan</u>**

(y)   judgment that the making, using, offering to sell, selling, marketing, distributing, or importing of Mylan's Glatiramer Acetate Product prior to the expiration of the '775 patent has infringed, actively induced infringement, and/or contributed to the infringement of one or more claims of '775 patent;

(z)   judgment that the making, using, offering to sell, selling, marketing, distributing, or importing of Mylan's Glatiramer Acetate Product prior to the expiration of the '993 patent has infringed, actively induced infringement, and/or contributed to the infringement of one or more claims of '993 patent;

(aa)  an Order pursuant to 35 U.S.C. § 283 preliminarily and permanently enjoining Mylan and all persons acting in concert with Mylan from commercially manufacturing, using, offering for sale, selling, marketing, distributing, or importing Mylan's Glatiramer Acetate

Product, or any product or compound the use or manufacture of which infringes the '775 patent, or inducing or contributing to the infringement of the '775 patent until after the expiration of the '775 patent;

(bb) an Order pursuant to 35 U.S.C. § 283 preliminarily and permanently enjoining Mylan and all persons acting in concert with Mylan from commercially manufacturing, using, offering for sale, selling, marketing, distributing, or importing Mylan's Glatiramer Acetate Product, or any product or compound the use or manufacture of which infringes the '993 patent, or inducing or contributing to the infringement of the '993 patent until after the expiration of the '993 patent;

(cc) an award of Teva's damages or other monetary relief to compensate Teva for Mylan's commercial manufacture, use, offer to sell, sale, or marketing or distribution in, or importation into the United States of Mylan's Glatiramer Acetate Product, or any product or compound the use or manufacture of which infringes the '775 patent, or the inducement or contribution of the foregoing, prior to the expiration of the '775 patent in accordance with 35 U.S.C. § 284;

(dd) an award of Teva's damages or other monetary relief to compensate Teva for Mylan's commercial manufacture, use, offer to sell, sale, or marketing or distribution in, or importation into the United States of Mylan's Glatiramer Acetate Product, or any product or compound the use or manufacture of which infringes the '993 patent, or the inducement or contribution of the foregoing, prior to the expiration of the '993 patent in accordance with 35 U.S.C. § 284;

(ee) a judgment that this is an exceptional case and an award to Teva of its attorneys' fees under 35 U.S.C. § 285;

58

(ff)  a judgment that Mylan's infringement of the '775 patent is willful;

(gg) a judgment that Mylan's infringement of the '993 patent is willful;

(hh) an award of Teva's reasonable costs and expenses in this action; and

(ii)  an award of any further and additional relief to Teva as this Court deems just and proper.

## Against Sandoz

(jj)  judgment that the making, using, offering to sell, selling, marketing, distributing, or importing of Sandoz's Glatiramer Acetate Product prior to the expiration of the '775 patent will infringe, actively induce infringement, and/or contribute to the infringement of one or more claims of the '775 patent;

(kk) judgment that the making, using, offering to sell, selling, marketing, distributing, or importing of Sandoz's Glatiramer Acetate Product prior to the expiration of the '993 patent will infringe, actively induce infringement, and/or contribute to the infringement of one or more claims of the '993 patent;

(ll)  an Order pursuant to 35 U.S.C. § 283 preliminarily and permanently enjoining Sandoz and all persons acting in concert with Sandoz from commercially manufacturing, using, offering for sale, selling, marketing, distributing, or importing Sandoz's Glatiramer Acetate Product, or any product or compound the use or manufacture of which infringes the '775 patent, or inducing or contributing to the infringement of the '775 patent until after the expiration of the '775 patent;

(mm)   an Order pursuant to 35 U.S.C. § 283 preliminarily and permanently enjoining Sandoz and all persons acting in concert with Sandoz from commercially manufacturing, using, offering for sale, selling, marketing, distributing, or importing Sandoz's Glatiramer Acetate

59

Product, or any product or compound the use or manufacture of which infringes the '993 patent, or inducing or contributing to the infringement of the '993 patent until after the expiration of the '993 patent;

(nn) an award of Teva's damages or other monetary relief to compensate Teva if Sandoz engages in the commercial manufacture, use, offer to sell, sale, or marketing or distribution in, or importation into the United States of Sandoz's Glatiramer Acetate Product, or any product or compound the use or manufacture of which infringes the '775 patent, or the inducement or contribution of the foregoing, prior to the expiration of the '775 patent in accordance with 35 U.S.C. § 284;

(oo) an award of Teva's damages or other monetary relief to compensate Teva if Sandoz engages in the commercial manufacture, use, offer to sell, sale, or marketing or distribution in, or importation into the United States of Sandoz's Glatiramer Acetate Product, or any product or compound the use or manufacture of which infringes the '993 patent, or the inducement or contribution of the foregoing, prior to the expiration of the '993 patent in accordance with 35 U.S.C. § 284;

(pp) a judgment that this is an exceptional case and an award to Teva of its attorneys' fees under 35 U.S.C. § 285;

(qq) a judgment that Sandoz's infringement of the '775 patent is willful;

(rr)  a judgment that Sandoz's infringement of the '993 patent is willful;

(ss)  an award of Teva's reasonable costs and expenses in this action; and

(tt)  an award of any further and additional relief to Teva as this Court deems just and proper.

**Against Synthon**

(uu) judgment that the making, using, offering to sell, selling, marketing, distributing, or importing of Synthon's Glatiramer Acetate Product prior to the expiration of the '775 patent will infringe, actively induce infringement, and/or contribute to the infringement of one or more claims of the '775 patent;

(vv) judgment that the making, using, offering to sell, selling, marketing, distributing, or importing of Synthon's Glatiramer Acetate Product prior to the expiration of the '993 patent will infringe, actively induce infringement, and/or contribute to the infringement of one or more claims of the '993 patent;

(ww)    an Order pursuant to 35 U.S.C. § 283 preliminarily and permanently enjoining Synthon and all persons acting in concert with Synton from commercially manufacturing, using, offering for sale, selling, marketing, distributing, or importing Synthon's Glatiramer Acetate Product, or any product or compound the use or manufacture of which infringes the '775 patent, or inducing or contributing to the infringement of the '775 patent until after the expiration of the '775 patent;

(xx) an Order pursuant to 35 U.S.C. § 283 preliminarily and permanently enjoining Synthon and all persons acting in concert with Synthon from commercially manufacturing, using, offering for sale, selling, marketing, distributing, or importing Synthon's Glatiramer Acetate Product, or any product or compound the use or manufacture of which infringes the '993 patent, or inducing or contributing to the infringement of the '993 patent until after the expiration of the '993 patent;

(yy) an award of Teva's damages or other monetary relief to compensate Teva if Synthon engages in the commercial manufacture, use, offer to sell, sale, or marketing or distribution in, or

61

importation into the United States of Synthon's Glatiramer Acetate Product, or any product or compound the use or manufacture of which infringes the '775 patent, or the inducement or contribution of the foregoing, prior to the expiration of the '775 patent in accordance with 35 U.S.C. § 284;

(zz)    an award of Teva's damages or other monetary relief to compensate Teva if Synthon engages in the commercial manufacture, use, offer to sell, sale, or marketing or distribution in, or importation into the United States of Synthon's Glatiramer Acetate Product, or any product or compound the use or manufacture of which infringes the '993 patent, or the inducement or contribution of the foregoing, prior to the expiration of the '993 patent in accordance with 35 U.S.C. § 284;

(aaa)    a judgment that this is an exceptional case and an award to Teva of its attorneys' fees under 35 U.S.C. § 285;

(bbb)    a judgment that Synthon's infringement of the '775 patent is willful;

(ccc)    a judgment that Synthon's infringement of the '993 patent is willful;

(ddd)    an award of Teva's reasonable costs and expenses in this action; and

(eee)    an award of any further and additional relief to Teva as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Teva demands a trial by jury of all matters to which it is entitled to trial by jury pursuant to Fed. R. Civ. P. 38.

*/s/ Nathan R. Hoeschen*
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Teva Pharmaceuticals USA, Inc.,
Teva Pharmaceutical Industries, Ltd., and Teva
Neuroscience, Inc.*

OF COUNSEL:
David M. Hashmall
Elizabeth J. Holland
Daniel P. Margolis, Ph.D.
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
(212) 813-8800

Paul F. Ware
Daryl L. Wiesen
Brian T. Drummond
Joshua Weinger
John T. Bennett
Nicholas K. Mitrokostas
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
(617) 570-1000

William G. James
GOODWIN PROCTER LLP
901 New York Ave. NW
Washington, DC 20001
(202) 346-4000

Dated: October 19, 2017

63